Docket No. 11-56600

---

*In the*

# United States Court of Appeals

*for the*

# Ninth Court

---

JESSE MEYER, an individual, on his own behalf and on behalf of all others similarly situated, Plaintiff-Appellee,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC, a Delaware limited liability company, Defendant-Appellant,
and
DOES 1-100, inclusive, Defendant.

———————————————————————————

Appeal from the United States District Court
for the Southern District of California
No. 11-cv-01008-AJB-RBB
The Honorable Anthony J. Battaglia

———————————————————————————

**APPELLEE'S RESPONSE TO THE APPELLANT'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC AND SUPPORTING *AMICUS CURIAE* BRIEFS**

———————————————————————————

PARISI & HAVENS LLP
David C. Parisi
Suzanne Havens Beckman
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299

PRESTON LAW OFFICES
Ethan Preston
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540

*Attorneys for Plaintiff-Appellee Jesse Meyer*

# **TABLE OF CONTENTS**

Introduction .................................................................................................1

Argument......................................................................................................2

I.      PRA Can Readily Comply With the Injunction ...............................2

II.     PRA's Predictive Dialers Constitute ATDSs Under the FCC's Rulings ........3

        A.      The Hobbs Act Precludes Review of the FCC Rulings in this
                Proceeding ...................................................................................4

        B.      Because the FCC Had Authority to Interpret the TCPA under
                47 U.S.C. § 201(b), Its Rulings Are Entitled to *Chevron*-Type
                Deference......................................................................................6

                1.      The FCC Has Broad Authority to Construe TCPA
                        Subsection 227(a)..........................................................7

                2.      *Satterfield* Did Not Bar the FCC from Interpreting the
                        TCPA's Definition of an ATDS ..................................8

        C.      The FCC's Rulings Are Vastly More Persuasive than PRA's
                Statutory Construction.................................................................9

III.    The Court Properly Ruled that Debt Collectors Only Have Prior
        Express Consent When the Consumer Provided His or Her Number
        "During the Transaction" With the Original Creditor...................10

        A.      PRA Does Not Provide Any Reason to Deviate From the *ACA
                Declaratory Ruling* ..................................................................11

        B.      The *Amici Curiae* Do Not Proide Any Reason to Deviate From
                the *ACA Declaratory Ruling* ...................................................12

IV.     The Court Properly Held that Money Damages Were Not an Adequate
        Remedy ......................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.*,
  863 F.2d 891 (D.C.Cir. 1988).............................................................................17

*American Rivers v. F.E.R.C.*,
  201 F.3d 1186 (9th Cir. 1999) ..........................................................................16

*AT&T Corp. v. Iowa Utilities Bd.*,
  525 U.S. 366 (1999)..............................................................................................7

*Barnhart v. Walton*,
  535 U.S. 212 (2002)..............................................................................................8

*Boyce's Ex'rs v. Grundy*,
  28 U.S. 210 (1830)..............................................................................................16

*CE Design, Ltd. v. Prism Business Media, Inc.*,
  606 F.3d 443 (7th Cir. 2010) ..............................................................................5

*Centerline Equipment Corp. v. Banner Personnel Serv., Inc.*,
  545 F. Supp. 2d 768 (N.D. Ill. 2008)................................................................17

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984).........................................................................................4, 8

*Cole v. U.S. Capital*,
  389 F.3d 719 (7th Cir. 2004) ............................................................................14

*Conrad v. GMAC*,
  No. 10-2220, 2012 U.S. Dist. LEXIS 92907 (N.D. Tex. June 12, 2012)...........12

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)...........................................................................................15

*Gene & Gene LLC v. BioPay LLC*,
  541 F.3d 318 (5th Cir. 2008) ............................................................................12

*Global Crossing Telecommc'ns, Inc. v. Metrophones Telecommc'ns, Inc.*,
    550 U.S. 45 (2007) .............................................................................. 7

*Hamilton v. Voxeo Corp.*,
    No. 07-404, 2009 WL 1868541 (S.D. Ohio June 25, 2009) ............................. 16

*Hicks v. Client Servs., Inc.*,
    No. 07-61822, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008) ........................... 12

*Interstate Cigar Co. v. United States*,
    928 F.2d 221 (7th Cir. 1991) .............................................................. 16

*Lake Charles Rice Milling Co. v. Pac. Rice Growers' Ass'n*,
    295 F. 246 (9th Cir. 1924) ................................................................. 16

*Leckler v. Cashcall, Inc.*,
    No. 07-4002, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) ............................. 6

*Meyer v. Portfolio Recovery Associates, LLC*,
    696 F.3d 943 (9th Cir. 2012) ....................................................... passim

*Mitts v. Bagley*,
    626 F.3d 366 (6th Cir. 2010) (Sutton, J., joined by Kethledge, J.,
    concurring in denial of rehearing *en banc)* ........................................ 17

*Moore v. Firstsource Advantage, LLC*,
    No. 07-770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011) ............................. 13

*National Ass'n of Home Builders v. Defenders of Wildlife*,
    551 U.S. 644 (2007) .......................................................................... 8

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994) ............................................................. 17

*Osorio v. State Farm Bank, F.S.B.*,
    859 F. Supp. 2d 1326 (S.D. Fla. 2012) ................................................. 13

*Puerta v. United States*,
    121 F.3d 1338 (9th Cir. 1997) ........................................................... 15

*Rodgers v. United States*,
    158 F. Supp. 670 (S.D. Cal. 1958) ...................................................... 17

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ................................................6, 8, 9, 15

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ...................................................................9

*Soppet v. Enhanced Recovery Co., LLC*,
  679 F.3d 637 (7th Cir. 2012) .........................................................2, 3

*United States v. Bluitt*,
  815 F. Supp. 1314 (N.D. Cal. 1992) ....................................................16

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ...................................................................9

*US West Commc'ns, Inc. v. Jennings*,
  304 F.3d 950 (9th Cir. 2002) ..........................................................5

*Wilson v. A.H. Belo Corp.*,
  87 F.3d 393 (9th Cir. 1996) .....................................................5, 10, 12

**STATUTES**

47 U.S.C. § 201(b) .......................................................................passim

Hobbs Act, 28 U.S.C. § 2342...........................................................1, 5, 6

Telephone Consumer Protection Act, 47 U.S.C. § 227 ....................................passim

**OTHER AUTHORITIES**

*In the Matter of Rules and Regulations Implementing the Telephone
  Consumer Protection Act of 1991, 2003 Report and Order*,
  18 FCC Rcd. 14014 (July 3, 2003) ......................................................3

*In the Matter of Rules and Regulations Implementing the Telephone
  Consumer Protection Act of 1991, Request of ACA International for
  Clarification and Declaratory Ruling*,
  23 FCC Rcd. 559 (Jan. 4, 2008) ..................................................passim

137 Cong. Rec. S16206 (daily ed. Nov. 7, 1991)..........................................15

## Introduction

Plaintiff-Appellee Jesse Meyer ("Meyer") submits his response to Defendant-Appellant Portfolio Recovery Associates, LLC's ("PRA") petition for rehearing ("Petition"), as well as the *amicus curiae* briefs filed in support thereof, of the Court's order affirming the preliminary injunction against PRA's continued violations of Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA"). The Petition and *amicus curiae* briefs do not advance any new reason to disturb the injunction.

The Petition re-argues four points already fully addressed in prior briefing. At the outset, PRA suggests that compliance with the TCPA is burdensome for debt collectors. Even if this is true, it would not change the fact that the TCPA is the law. Second, PRA contends that the predictive dialers it used to call Meyer and the other class members are not an "automatic telephone dialing system" ("ATDS"). *Cf.* 47 U.S.C. § 227(a)(1). The Hobbs Act, 28 U.S.C. § 2342, and the two FCC orders directly on point, foreclose this argument entirely. Third, PRA argues that the Court incorrectly interpreted the phrase "prior express consent." *Cf.* 47 U.S.C. § 227(b)(1)(A). Again, the Hobbs Act and the applicable FCC orders foreclose this argument. The *amici* are concerned with an unreasonable construction of the phrase "during the transaction" that is not implicit in either the FCC orders or the Court's order. Finally, PRA argues that the Court did not

1

consider whether damages were an adequate remedy when it affirmed the injunction. Plainly, statutory damages *were* inadequate here because they failed to deter PRA from violating the TCPA on a massive scale.

**Argument**

## I.  PRA Can Readily Comply With the Injunction

PRA's underlying concern is that complying with the injunction is less convenient than simply disregarding the TCPA (and settling the occasional individual TCPA case). PRA previously argued that the TCPA was "no longer viable because individuals use cellular telephones instead of landlines more often, increasingly have no other phone number at which to be contacted." (Appellant's Br. 28-29.) But debt collectors are not excused from complying with the TCPA simply because it is less convenient now that "people are moving in droves from landline to cell service." *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) (rejecting arguments that TCPA makes debt collection more difficult).

Likewise, the injunction is narrowly-tailored: it only "restrain[s] PRA from using its Avaya Proactive Contact Dialer to place calls to cellular telephone numbers with California area codes that PRA obtained via skip-tracing." *Meyer v. Portfolio Recovery Associates, LLC*, 696 F.3d 943, 946 (9th Cir. 2012). PRA can

2

readily continue to collect debts while complying with this injunction. *See Soppet*,

679 F.3d at 641 (listing ways debt collectors can comply with the TCPA).

> If Congress has failed to appreciate changes in the
> telecommunications business, [debt collectors] should alert their
> lobbyists. Carl von Clausewitz wrote that war is the continuation of
> politics by other means . . . but adjudication is not the continuation of
> legislation by other means.

*Id*. Although PRA complains that the Court "goes further in restricting technology

used to call cellular telephone numbers," the Court's decision is simply the logical

application of the FCC's orders. (Appellant's Pet. 1.) The injunction reflects the

law and was correctly affirmed.

## II.    PRA's Predictive Dialers Constitute ATDSs Under the FCC's Rulings

It is undisputed that PRA used predictive dialers to make the relevant calls.

*Meyer*, 696 F.3d at 949. The Petition tries to re-argue whether predictive dialers

are ATDSs. (Appellant's Pet. 3-9.) In doing so, the Petition elides the fact that the

FCC has explicitly ruled that predictive dialers are ATDSs twice. (*Cf. id*. at 3-5.)

> [T]he purpose of the [TCPA's definition of an ATDS] is to ensure that
> the prohibition on autodialed calls not be circumvented. [The FCC]
> finds that a predictive dialer falls within the meaning and statutory
> definition of "automatic telephone dialing equipment" and the intent
> of Congress.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, *2003 Report and Order*, 18 FCC Rcd. 14014, 14092-93,

¶133 (July 3, 2003) ("*2003 Order*"). The FCC reaffirmed that "a predictive dialer

3

constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers" in 2008. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559, 566, ¶12 (Jan. 4, 2008) ("*ACA Declaratory Ruling*").

At the outset, the Hobbs Act precludes review of these FCC rulings here. Even taken on its merits, PRA's contention that these orders do not warrant deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) is clearly erroneous. Conversely, PRA's construction of "capacity" depends on an inherently hazy distinction between "present capacity" and "future capacity." Even without *Chevron*-style deference, the FCC's rulings are far more persuasive than the incoherent statutory construction urged by PRA.

## A. The Hobbs Act Precludes Review of the FCC Rulings in this Proceeding

PRA's opening brief made it indelibly clear that the only way to find that predictive dialers were *not* ATDSs was to hold the foregoing FCC orders invalid:

> [T]he district court not only erred by looking to the FCC's interpretation of the definition of "ATDS," but it also erred by citing the FCC's "TCPA rulemaking authority." . . . [*T*]*he FCC's interpretation of ATDS is unauthorized and without effect.*

(Appellant's Br. 24-25 (emphasis added).) Although the Petition studiously ignores the Hobbs Act, it is fatal to PRA's efforts to reinterpret the definition of an ATDS.

4

The Hobbs Act restricts jurisdiction to review final FCC orders to original proceedings in the Court of Appeals: the district court did not have "jurisdiction to pass on the validity of the FCC['s] regulations, and no question as to their validity can be before [the Court] in this appeal." *US West Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002). "The Hobbs Act, 28 U.S.C. § 2342, requires that all challenges to the validity of final orders of the FCC be brought by original petition in a court of appeals." *Id*.

Neither the district court nor this Court had jurisdiction to invalidate the FCC's rulings that predictive dialers constitute ATDSs in this proceeding. PRA has asserted elsewhere that the Hobbs Act does not bar consideration of "arguments that the FCC's exemption decision should be reversed." (Dkt. #35-1 at 2.) That is not the law in this Circuit: "all that is required" for the Hobbs Act to apply is for the litigants' "claims [to] raise the same issues decided by the FCC" in its final orders. *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 399-400 (9th Cir. 1996) (followed by *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) ("deeming agency action valid or ineffective is ***precisely the sort of review that the Hobbs Act delegates to the courts of appeals*** in cases challenging final FCC orders"; emphasis added)).

> If the district court disagreed with the [FCC's declaratory rulings,] the effect of the proceeding would have been to enjoin, set aside, or

suspend the [d]eclaratory [r]uling[s] – all actions which are within the exclusive domain of the court of appeals under § 2342.

*Id*. Indeed, the Hobbs Act specifically precludes courts from ruling the *ACA Declaratory Ruling* invalid. *See Leckler v. Cashcall, Inc.*, No. 07-4002, 2008 WL 5000528, *2-3 (N.D. Cal. Nov. 21, 2008). Neither the Petition nor the *amici* briefs even acknowledge the existence of the Hobbs Act, let alone try to explain why it does not preclude their arguments.

### B. Because the FCC Had Authority to Interpret the TCPA under 47 U.S.C. § 201(b), Its Rulings Are Entitled to *Chevron*-Type Deference

In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the Court held that "[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Id*. at 951 (emphasis in original). Seizing on *Satterfield's* use of the word "clear," PRA leaps to the conclusions that there are no ambiguities in the TCPA's definition of an ATDS so there is no room for agency interpretation (and therefore the FCC's rulings are not entitled to *Chervon*-style deference). (Appellant's Pet. 4-5. *See also* Appellant's Br. 23-24.) Each of these conclusions is wrong.

### 1. The FCC Has Broad Authority to Construe TCPA Subsection 227(a)

Congress authorized the FCC to interpret 47 U.S.C. § 227(a) under 47 U.S.C. § 201(b). PRA and *amici* incorrectly assert that the FCC's authority to construe the TCPA is limited to 47 U.S.C. § 227(*b*). (Appellant's Br. 25; Dkt. #38-1 at 6-7.) In fact, section 201(b) generally authorizes the FCC to "prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter." 47 U.S.C. § 201(b). "Congress, in § 201(b), delegated to the agency authority to 'fill' a 'gap,' i.e., to apply § 201 through regulations and orders with the force of law." *Global Crossing Telecommc'ns, Inc. v. Metrophones Telecommc'ns, Inc.*, 550 U.S. 45, 58 (2007). The TCPA fits into the general delegation of rule-making authority under section 201(b) because Congress "expressly directed that" the TCPA was to "be inserted into the Communications Act of 1934." *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 377 (1999). *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2395 (1991) ("[a]n Act to amend the Communications Act of 1934").[1] Congress

---

[1] Moreover, the TCPA's specific delegation of regulatory authority to the FCC under section 227(b) does not imply any restriction on the general delegation under section 201(b). Section 227(b) *mandated* that the FCC promulgate regulations. 47 U.S.C. § 227(b)(2) (FCC "*shall* prescribe regulations to implement the requirements of this subsection"). It is "not peculiar that the mandated regulations should be specifically referenced, whereas regulations permitted pursuant to the Commission's § 201(b) authority are not." *AT&T*

expressly authorized each of the FCC rulings at issue in this appeal, and each of these rulings is entitled to *Chevron*-style deference.

### 2. *Satterfield* Did Not Bar the FCC from Interpreting the TCPA's Definition of an ATDS

*Satterfield* held that it was "clear" that the definition of an ATDS hinges on the equipment's "capacity," rather than the equipment's actual use: it did not address whether that 47 U.S.C. § 227(a)(1) applies to predictive dialers. *Satterfield*, 569 F.3d at 951. Indeed, the alleged ATDS in *Satterfield* sent text messages and involved a different technology than the predictive dialers addressed in the FCC orders. Likewise, the TCPA's statutory text does not directly address whether ATDSs constitute predictive dialers. Hence, the FCC's rulings warrant *Chevron*-type deference because "'Congress has not *directly* addressed the *precise question* at issue' through the statutory text." *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007) (quoting *Chevron*, 467 U.S. at 843; emphasis added). Where a "statute 'is silent . . . with respect to the specific issue,'" the agency's interpretation must be sustained as long as it is "'based on a permissible construction'" of the statute. *Barnhart v. Walton*, 535 U.S. 212, 218 (2002) (quoting *Chevron*, 467 U.S. at 843). Hence, *Satterfield* did not (and could not) invalidate the FCC orders construing the definition of an ATDS to include

---

*Corp.*, 525 U.S. at 385 (specific delegation of regulatory authorty "is surely not enough to displace that explicit authority" in section 201(b)).

predictive dialers.

### C. The FCC's Rulings Are Vastly More Persuasive than PRA's Statutory Construction

PRA argues that the Court erred by confusing "present capacity" with "future capacity." (Appellant's Pet. 8.) The TCPA itself does not use the words "present" or "future"; further, it is clear that the only coherent distinction between between "present capacity" and "future capacity" is the amount of modification required. (*See id*. at 6, 8 (referencing "time and resources required to modify equipment to achieve the capacity" and asserting that "[s]ubstantial modification to PRA's dialers would be necessary to achieve the required, theoretical, future capacity.")) This distinction begs the question: how much modification would be permitted? PRA does not answer this question. The TCPA's statutory lanugage only tells us that the definition of an ATDSs is not limited to devices which require no modification. *Cf. Satterfield*, 569 F.3d at 951. Even if the FCC were not authorized to interpret the TCPA, its rulings would still merit deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) and make more sense than the blurry, incoherent line that PRA tries to draw between "present capacity" with "future capacity." *See United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001) ("well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly

9

resort for guidance"; citations, punctuation omitted).

III.    **The Court Properly Ruled that Debt Collectors Only Have Prior Express Consent When the Consumer Provided His or Her Number "During the Transaction" With the Original Creditor**

The Petition contends that the Court's ruling on "prior express consent" is somehow inconsistent with the *ACA Declaratory Ruling*. (Appellant's Pet. 9-12.) The text of the *ACA Declaratory Ruling* and the Court's decision flatly contradict such a contention. The *ACA Declaratory Ruling* specifically defines "prior express consent" in the context of debt collectors calling to collect debts: "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided ***during the transaction*** that resulted in the debt owed." *ACA Declaratory Ruling*, 23 FCC Rcd. at 564-65, ¶10 (emphasis added). The Court tracked the FCC's language precisely:

> [P]rior express consent is deemed granted only if the wireless telephone number was provided by the consumer to the creditor, and only if it was provided ***at the time of the transaction that resulted in the debt at issue***. . . . Thus, consumers who provided their cellular telephone numbers to creditors after the time of the original transaction are not deemed to have consented to be contacted at those numbers for purposes of the TCPA.

*Meyer*, 696 F.3d at 949 (citing *ACA Declaratory Ruling*, 23 FCC Rcd. at 564-65, ¶10; emphasis added). As stated above, the *ACA Declaratory Ruling* was authorized under 47 U.S.C. § 201(b), and the Court does not have jurisdiction to set aside the *ACA Declaratory Ruling* in this proceeding. *See Wilson*, 87 F.3d at

400. Hence, by following the *ACA Declaratory Ruling*, the Court simply complied

with the Hobbs Act: no more, no less.

### A. PRA Does Not Provide Any Reason to Deviate From the *ACA Declaratory Ruling*

The Petition argues that the Court's decision is inconsistent with the *ACA*

*Declaratory Ruling* because the FCC order suggested that original creditors could

obtain consent in a variety of forms. (Appellant's Pet. 10-11.) The *ACA*

*Declaratory Ruling* stated that an original creditor could use a variety of

documents to prove consent. *ACA Declaratory Ruling*, 23 FCC Rcd. at 565, ¶10 &

n. 37 (records showing consent may include "purchase agreements, sales slips, and

credit applications," or "other documents" that inform consumers that they were

providing consent to receive autodialed calls).[2] But nothing in the Court's opinion

restricts the *form* consent may take; rather, the opinion simply incorporates the

FCC's plain and unambiguous language restricting the *timing* of consent, i.e.,

"*during the transaction that resulted in the debt owed.*" *Id*. at 564-65, ¶10

(emphasis added).

---

[2]  The *ACA Declaratory Ruling* does not, however, support PRA's assertion that consent can be provided by "oral" or "any other means." *See ACA Declaratory Ruling*, 23 FCC Rcd. at 565, ¶10 ("creditors are in the best position to have **records** kept in the usual course of business showing such consent"; emphasis added).

The Petition cites several cases for the proposition that consent can be given at different times. As these cases do not concern debt collectors, *they are inapposite because the* ACA Declaratory Ruling *did not control. See Conrad v. GMAC*, No. 10-2220, 2012 U.S. Dist. LEXIS 92907, *8-11 (N.D. Tex. June 12, 2012) (original creditor). *See also Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (fax advertisement); *Hicks v. Client Servs., Inc.*, No. 07-61822, 2008 WL 5479111, *7 (S.D. Fla. Dec. 11, 2008) (same).

### B.     The *Amici Curiae* Do Not Proide Any Reason to Deviate From the *ACA Declaratory Ruling*

The *amici curiae* also contest the *ACA Declaratory Ruling*'s ruling that consent must be given "during the transaction that resulted in the debt owed." *ACA Declaratory Ruling*, 23 FCC Rcd. at 565, ¶10. Again, Congress authorized the FCC to make the *ACA Declaratory Ruling* under 47 U.S.C. § 201(b). (*Cf.* Dkt. #38-1 at 6-7, 16-17.) The Hobbs Act precludes the *amici*'s attacks on the FCC's rulings just as it precludes PRA's attacks. *See Wilson*, 87 F.3d at 400. In particular, there is no basis for the assertion that the FCC cannot impose temporal restrictions on the phrase "***prior*** express consent," especially where the phrase plainly already includes a temporal limitation. (*Cf.* 47 U.S.C. § 227(b) *with* Dkt. #38-1 at 4-6.)

The *amici* appear to be concerned that the phrase "during the transaction" could be construed to limit effective consent to, e.g., an initial credit application in

the context of an open credit account, even though a consumer might voluntarily provide the original creditor updated contact information later on. While this is a practical concern, there is no reason to construe the phrase "during the transaction" so myopically. Consent may be provided at any time until the "transaction" is complete: in context of an open account, this may mean, e.g., until credit is withdrawn, the account is closed, sold, etc. *Cf. Osorio v. State Farm Bank, F.S.B.*, 859 F. Supp. 2d 1326 (S.D. Fla. 2012) (consumer updated telephone number while account was open); *Moore v. Firstsource Advantage, LLC*, No. 07-770, 2011 WL 4345703, *11 (W.D.N.Y. Sept. 15, 2011) (original creditor obtained number before it was provided to defendant debt collector).

The Court should leave the precise contours of when a "transaction" is complete to develop with the common law, rather than definitively identifying the point when a transaction is complete in this proceeding. There is no need to do so here: as one *amici* pointed out, the injunction only covers telephone numbers "which [came] from third-party sources," so the Court does not need to decide the "issue regarding when consumers must provide their cell phone numbers to establish prior express consent." (Dkt. #39-2 at 3-4.) As the Court found, the record showed that "PRA's practice was to first attempt to contact debtors via the information received from creditors and only resort to skip-tracing if the debtors

13

could not be reached using such information." *Meyer*, 696 F.3d at 948.[3] Hence, the transactions at issue were complete long before the original creditors transferred the underlying debts to PRA. Further, adopting a rigid rule based on the limited record in this appeal may well give rise to unanticipated loopholes that can be exploited by creditors and debt collectors seeking to evade the TCPA's strictures and to defeat the reasonable expectations of consumers. *Cf. Cole v. U.S. Capital*, 389 F.3d 719, 726-27 (7th Cir. 2004) (defendant argued that any offer of credit, even for $1, would qualify for FCRA's "firm offer of credit" exemption).

## IV.    The Court Properly Held that Money Damages Were Not an Adequate Remedy

The Petition argues that the Court did not require a demonstration of irreparable harm. (Appellant's Pet. 12-16.) Although PRA devoted substantial space to this argument, it is a non-sequitor because the Court "conclude[d] that Meyer demonstrated irreparable harm under the traditional four-part test," whether or not he was required to do so. *Meyer*, 696 F.3d at 951.

On its final page, the Petition faults the Court for allegedly failing to

---

[3]    Our computer system allows each collector to view the scanned documents relating to the account which have been received from the seller . . . If a collector is unable to establish contact with a customer based on information received, the collector must undertake skip tracing procedures to develop important account information.
(Supp. E.R. 14.)

consider "whether damages under the TCPA would be inadequate." (Appellant's

Pet. 17.) The Court's ruling belies this argument:

> We have little difficulty concluding the record supports the district court's finding that PRA would have continued to violate the TCPA if an injunction had not been issued. Between February 1 and March 31, 2011, PRA called 46,657 cellular telephone numbers with California area codes PRA obtained via skip-tracing. In response to Meyer's motion for a preliminary injunction, PRA did not acknowledge the wrongful nature of its conduct. Instead, PRA assured the court it would stop calling Meyer without making any assurance regarding other members of the provisional class. We agree with Meyer that PRA's violation of the TCPA violated his right to privacy, an interest the TCPA intended to protect. *Satterfield*, 569 F.3d at 954. Accordingly, Meyer demonstrated that irreparable harm is likely in the absence of injunctive relief.

*Meyer*, 696 F.3d at 951. The Court's decision flatly contradicts PRA's assertion

that the Court simply assumed irreparable harm.

PRA argues that the TCPA's statutory damages ($500 per violation) "fairly

compensates someone for any injuries." (Appellant's Pet. 17 (quoting 137 Cong.

Rec. S16206 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).) Again, "the

authoritative statement is the statutory text, not the legislative history." *Exxon*

*Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Legislative

history "is not the law. . . . [It] need not be written with the same care, or

scrutinized by those skeptical of the statute with the same care, as statutory

language." *Puerta v. United States*, 121 F.3d 1338, 1344 (9th Cir. 1997). Congress

expressly authorized injunctive relief *in addition to* statutory damages. 47 U.S.C.

15

§ 227(b)(3). This fact suggests that Congress thought injunctive relief necessary, even if Senator Hollings did not. *Cf. American Rivers v. F.E.R.C.*, 201 F.3d 1186, 1209 (9th Cir. 1999) ("[i]ndividual senators do not make laws; majorities of the House and Senate do"; citation, punctuation omitted). *See Hamilton v. Voxeo Corp.*, No. 07-404, 2009 WL 1868541, *2 (S.D. Ohio June 25, 2009) (where Congress authorized statutory damages and injunctive relief, court held it did not have "authority to deny injunctive relief because a damages remedy might by theoretically adequate").

If PRA's argument were accepted, the TCPA's statutory damages would serve merely to set the price for a license to violate the law – rendering them an inadequate remedy:

> [T]he 'mere existence' of [a damages remedy] is not sufficient to warrant denial of equitable relief: "In order to preclude the granting of relief by the equity court, an available remedy at law must be plain, clear and certain, prompt or speedy, sufficient, full and complete, practical, efficient to the attainment of the ends of justice, and final."

*United States v. Bluitt*, 815 F. Supp. 1314, 1317-18 (N.D. Cal. 1992) (quoting *Interstate Cigar Co. v. United States*, 928 F.2d 221, 223 (7th Cir. 1991); punctuation omitted).[4] As the Court found, it is amply clear from record that

---

[4] "It is not enough that there is a remedy at law: it must be plain and adequate, or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." *Boyce's Ex'rs v. Grundy*, 28 U.S. 210, 214 (1830) (quoted by *Lake Charles Rice Milling Co. v. Pac. Rice Growers'*

statutory damages failed to deter PRA from violating the TCPA on a massive

scale. *See Meyer*, 696 F.3d at 951. Hence, the TCPA's statutory damages were an

inadequate remedy. *Cf. Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007,

1011 (9th Cir. 1994) (purpose of statutory damages is "to deter future violations");

*Centerline Equipment Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768,

777-78 (N.D. Ill. 2008) (TCPA's statutory damages "deter[] unwanted

solicitation").

## Conclusion

Because the district court applied the proper standards and its findings were

not clearly erroneous, the panel affirmed. This case hardly presents those "rarest of

circumstances"[5] necessitating rehearing or en banc review. The petition for

rehearing or rehearing en banc should be denied.

Dated: November 29, 2012        By: ___s/Ethan Preston_____
                                     David C. Parisi (162248)
                                     Suzanne Havens Beckman (188814)
                                     PARISI & HAVENS LLP

---

*Ass'n*, 295 F. 246, 249 (9th Cir. 1924); *Rodgers v. United States*, 158 F. Supp.
670, 679 (S.D. Cal. 1958)).

[5] "Saving en banc review for 'the rarest of circumstances,' particularly when the
leading ground for review is disagreement on the merits, thus 'reflects a sound,
collegial attitude,' one worth following here." *Mitts v. Bagley*, 626 F.3d 366,
370-371 (6th Cir. 2010) (Sutton, J., joined by Kethledge, J., concurring in
denial of rehearing *en banc)*, quoting *Air Line Pilots Ass'n Int'l v. E. Air Lines,
Inc.*, 863 F.2d 891, 925 (D.C.Cir. 1988) (R.B. Ginsburg, J., concurring in denial
of rehearing en banc)).

17

15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

18

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

Pursuant to Fed. R. App. P. 32 and Ninth Circuit Rules 35-4 and 40-1, this brief contains 4,149 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2010 and in a proportionally spaced typeface of 14 points or more.

Dated: November 29, 2012    By:   s/Ethan Preston
                                      David C. Parisi (162248)
                                      Suzanne Havens Beckman (188814)
                                      PARISI & HAVENS LLP
                                      15233 Valleyheart Drive
                                      Sherman Oaks, California 91403
                                      (818) 990-1299 (telephone)
                                      (818) 501-7852 (facsimile)
                                      dcparisi@parisihavens.com
                                      shavens@parisihavens.com

                                      Ethan Preston (263295)
                                      PRESTON LAW OFFICES
                                      8245 North 85th Way
                                      Scottsdale, Arizona 85258
                                      (480) 269-9540 (telephone)
                                      (866) 509-1197 (facsimile)
                                      ep@eplaw.us

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to 28 U.S.C. § 1746, I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on the date below. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: November 29, 2012    By:   s/Ethan Preston
                                                    Ethan Preston (263295)
                                                    PRESTON LAW OFFICES
                                                    8245 North 85th Way
                                                    Scottsdale, Arizona 85258
                                                    (480) 269-9540 (telephone)
                                                    (866) 509-1197 (facsimile)
                                                    ep@eplaw.us